577 So.2d 1131 (1991)
In re ARBITRATION BETWEEN U.S. TURNKEY EXPLORATION, INC. AND PSI, INC.
No. 90 CA 1640.
Court of Appeal of Louisiana, First Circuit.
March 28, 1991.
Writ Denied May 24, 1991.
*1132 John Hutchison, Lafayette, Brian Bro, and Stephen D. Ingram, Houston, Tex., for plaintiff-appellee U.S. Turnkey Exploration, Inc.
Douglas F. Pedigo, Lafayette, for defendant-appellant PSI, Inc.
Before EDWARDS, WATKINS and LeBLANC, JJ.
WATKINS, Judge.
PSI, Inc. (PSI) appeals the trial court judgment in favor of U.S. Turnkey Exploration, Inc. (U.S. Turnkey) confirming the arbitration award and dismissing PSI's motion to vacate the award.
The instant dispute arose when PSI accepted an assignment of a turnkey drilling contract between U.S. Turnkey and Senior G & A Operating Co., Inc. After the assignment of the drilling contract was made to PSI, a dispute arose over the method of payment for services rendered by U.S. Turnkey under the contract. U.S. Turnkey contended that PSI had agreed to allow U.S. Turnkey to proceed on a "daywork" basis, beginning on November 18, 1988, rather than on a "turnkey" basis. On the other hand, PSI contended that it never agreed to any "daywork" charges. The parties entered into the following stipulation of facts:
The dispute between U.S. Turnkey and PSI was arbitrated pursuant to a Turnkey Drilling Contract, which provided expressly as follows:
25. ARBITRATION AND GOVERNING LAW:
Any dispute, claims or controversies connected with, arising out of or related to this Contract, or the breach thereof, shall be settled by Arbitration to be conducted in accordance with the Rules of Arbitration of the American Arbitration Association. Judgment upon an award rendered pursuant to such Arbitration may be entered in any court having jurisdiction, or application may be made to such court for a judicial *1133 acceptance of the award and an order of enforcement, as the case may be. The place of Arbitration shall be Lake Charles, Louisiana. All questions arising out of this Contract or its validity, interpretation, performance or breach shall be governed by the laws of the State of Louisiana.
By agreement of the parties, the place of the arbitration was changed from Lake Charles to Baton Rouge, Louisiana.
The matter was tried before a panel of three arbitrators of the American Arbitration Association commencing on March 5, 1990 and ending on March 16, 1990. On April 18, 1990, the arbitration panel issued its Award in which it ordered PSI to pay U.S. Turnkey the sum of One Million Nine Hundred Seventy Thousand Two Hundred Thirty-Nine and 00/100 ($1,970,239.00) Dollars, plus Five Thousand Four Hundred Thirty-Four and 32/100 ($5,434.32) Dollars in administrative expenses.
U.S. Turnkey filed with the district court a Motion to Confirm the Award pursuant to LSA-R.S. 9:4201 et seq. PSI filed a Motion to Vacate the Award pursuant to LSA-R.S. 9:4210. The Motions were heard on May 25, 1990. The trial court denied the Motion to Vacate and granted the Motion to Confirm. The trial court signed appropriate judgments on that date.
PSI contends that the trial court erred in refusing to vacate the arbitration award based on LSA-R.S. 9:4210. PSI argues that the arbitration award was made in manifest disregard of the law of Louisiana; that the arbitrators were clearly or evidently partial and engaged in misbehavior which prejudiced its rights. Because two of PSI's assignments of error deal directly with specific language in the Arbitration Award, we attach the award as Attachment # 1.
The Louisiana Arbitration Law, LSA-R.S. 9:4201-4217, requires that a challenged arbitration award be vacated in any of the following cases:
A. Where the award was procured by corruption, fraud, or undue means.
B. Where there was evident partiality or corruption on the part of the arbitrators or any of them.
C. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced.
D. Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.
LSA-R.S. 9:4210.
PSI contends that the arbitration award was made in manifest disregard of the laws of Louisiana under two different theories. First, PSI contends that because the arbitration panel made the factual finding that there was "no apparent meeting of the minds as to whether the drilling operation on any given day would be in `standby' `daywork' or `turnkey' status" they were legally precluded from awarding daywork charges to U.S. Turnkey under Louisiana law. PSI alleges that the parties cannot be bound by the terms of a contract until the requisites for formation of a contract have been satisfied pursuant to Louisiana Civil Code Art. 1927.
Secondly, PSI disputes the panel's denial of its counterclaims against U.S. Turnkey for negligent drilling practices. PSI contends that the panel failed to apply the preponderance of the evidence standard on this issue because the panel stated in its reasons that the evidence and testimony as to the `drilling practices' of U.S. Turnkey were "inconclusive". From this statement, PSI reasons that the panel required it to prove conclusively that U.S. Turnkey engaged in negligent drilling practices.
"Arbitration is a mode of resolving differences through the investigation and determination of one or more individuals appointed for that purpose. The object of arbitration is the speedy disposition of differences through informal procedures without resort to court action." Firmin v. Garber, 353 So.2d 975, 977 (La.1977) (citing *1134 Housing Authority v. Henry Ericsson Co., 197 La. 732, 2 So.2d 195 (1941)). When parties agree to arbitration, they are presumed to accept the risk of procedural and substantive mistakes of either fact or law. Therefore, the arbitration award is presumed to be valid unless an error charged to the arbitrators fits one of the statutorily described deficiencies. Errors of fact or law do not invalidate a fair and honest arbitration award. See National Tea Co. v. Richmond, 548 So.2d 930 (La.1989). See also St. Tammany Manor, Inc. v. Spartan Building Corporation, 509 So.2d 424 (La. 1987). A court cannot substitute its conclusions for that of the arbitrators. Firmin v. Garber, 353 So.2d 975 (La.1977).
PSI asserts that we should accept the judicially created theory of manifest disregard of the law which has been developed in the federal courts, as an additional ground for vacating an arbitration award. Manifest disregard of the law was explained in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir.1986), as follows:
`Manifest disregard of the law' by arbitrators is a judicially-created ground for vacating their arbitration award, which was introduced by the Supreme Court in Wilko v. Swan, 346 U.S. 427, 436-37, 74 S.Ct. 182, 187-88, 98 L.Ed. 168 (1953). It is not to be found in the federal arbitration law. 9 U.S.C. § 10. Although the bounds of this ground have never been defined, it clearly means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term `disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it. (Citations omitted.)
It appears that this theory has been previously accepted by Louisiana courts as set forth in I.D.C., Inc. v. Natchitoches Development Company, 482 So.2d 958, 960 (La. App. 3d Cir.1986), quoting Allen v. A & W Contractors, Inc., 433 So.2d 839 (La.App. 3d Cir.1983), writ denied, 438 So.2d 578 (La.1983).[1]
[T]he award of the arbitrators cannot be set aside for errors of law or fact except where those errors are so gross as to suggest fraud, misconduct, bad faith, a failure to exercise honest judgment, or partisan bias, or so great as to prevent a full and fair exercise of the judgment of the arbitrators, or where, in the case of an error of law, it clearly appears from a statement of the basis of the award that the arbitrators meant to decide the case according to law. (Emphasis added.)
A review of the instant case leads us to the conclusion that the legal errors of which PSI complains do not constitute the type of legal errors which would justify vacating the arbitration award. Neither alleged error suggests fraud, misconduct, bad faith, etcetera. Furthermore, we cannot say that the arbitrators understood Louisiana law and deliberately disregarded it when they stated that there was apparently "no meeting of the minds" as to daywork charges. This statement does not necessarily preclude an award in favor of U.S. Turnkey under Louisiana law. See LSA-C.C. art. 2292. Therefore, we do not find that the award was in manifest disregard of the law.
Furthermore, the assertion that the panel must have imposed the wrong burden of proof because it stated that the evidence was "inconclusive" is merely speculation. The weight and sufficiency of the evidence are matters which are within the power of the arbitrators to decide, and we are without authority to substitute our conclusions for those of the arbitrators. Firmin, 353 So.2d 975.
Finally, we consider PSI's contention that the transcript of the arbitration proceeding demonstrates evident partiality on *1135 the part of the arbitrators or, alternatively, that one or more of the arbitrators engaged in statutory misbehavior such that the award should be vacated pursuant to LSA-R.S. 9:4210 B and C.
PSI contends that the arbitrators displayed partiality to U.S. Turnkey's counsel, manifested by suggestive hints on how Turnkey could prove its case, interruptions of questioning by counsel for PSI, and statements of opinions.
"To constitute evident partiality, it must clearly appear that the arbitrator was biased, prejudiced, or personally interested in the dispute."[2]Firmin, 353 So.2d at 978. Proof of evident partiality requires more than an "appearance of bias." A challenging party must show that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration. Morelite Const. v. N.Y.C. Dist. Council Carpenters, 748 F.2d 79 (2d Cir.1984).
It is also a general rule that a party must object to an arbitrator's partiality at the arbitration hearing, when he knows the reasons supporting the objection, before such an objection will be considered. Apperson v. Fleet Carrier Corp., 879 F.2d 1344 (6th Cir.1989), cert. denied, ___ U.S. ___, 110 S.Ct. 2206, 109 L.Ed.2d 533 (1990), and cases cited therein. A review of the record reveals that PSI did not object to all the alleged misconduct of the arbitrators which it cites in its brief. We therefore confine our review to those instances where PSI made a formal objection during the hearing.
PSI asserts that the conduct of the arbitrators should be judged by the same standard expected in judicial proceedings.[3] We disagree. In the instant case the parties agreed to arbitrate any dispute according to the rules of the American Arbitration Association (AAA). Because the AAA rules were not entered into evidence we are unable to review them. However, it is clear that the parties did not agree that the procedure and rules of evidence applicable to proceedings in the courts of the State of Louisiana would apply to the proceedings of arbitration.
Unless a mode of conducting the proceedings has been prescribed by the arbitration agreement or submission, or regulated by statute, arbitrators have a general discretion as to the mode of conducting the proceedings and are not bound by formal rules of procedure and evidence, and the standard of review of arbitration procedures is merely whether a party to an arbitration has been denied a fundamentally fair hearing. National Post Office Mailhandlers v. U.S. Postal Service, 751 F.2d 834 (6th Cir.1985).
Although the arbitrators actively participated in the arbitration by questioning witnesses and suggesting where the evidence was lacking, it does not appear that PSI was denied a fair hearing.
It is to be expected that during the course of an arbitration hearing that an arbitrator may develop an opinion and perhaps even express it. Fairchild & Co., Inc. v. Richmond, F. & P.R. Co., 516 F.Supp. 1305 (DDC 1981). Furthermore, since the advantages of arbitration are speed and informality, an arbitrator should be expected to act affirmatively to simplify and expedite the proceedings before him. Id. at 1313.
While an arbitrator's legitimate efforts to move the proceedings along expeditiously may be viewed as abrasive and disruptive, they do not constitute grounds for vacating an arbitration award unless the conduct strikes at the fundamental fairness *1136 of the hearing. Id. We find no such conduct in this case. Although the arbitrators were perhaps overzealous in their attempts to clarify the evidence and correctly apply the law, their conduct did not deny PSI a fair hearing.
After a review of the record in the instant case we do not find that the trial court erred in concluding that the record does not reveal that the arbitrators were biased, prejudiced or personally interested, or that they deliberately disregarded Louisiana law. Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant.
AFFIRMED.
*1137
 ATTACHMENT #1
 AMERICAN ARBITRATION ASSOCIATION
 CONSTRUCTION INDUSTRY ARBITRATION TRIBUNAL
In the Matter of the Arbitration between
U.S. Turnkey Exploration, Inc.
 -AND-
PSI, Inc.  Lake Charles, LA
CASE NUMBER: 71 198 00243 89 ADMINISTRATOR: Kimberly L. Emerson
 AWARD OF ARBITRATORS
WE, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with
the arbitration agreement entered into by the above-named parties, and dated
September 26, 1988, and having been duly sworn and having duly heard the
proofs and allegations of the parties, AWARD as follows:
The Panel has determined that PSI, Inc. ("PSI") agreed to become a party to
the "Turnkey Drilling Contract" dated September 26, 1988, with U.S. Turnkey
Exploration, Inc. ("USTE") as the Contractor. The date PSI became such a
party was November 18, 1988.
Although PSI and USTE were bound for contractual purposes relative to the
drilling of the East Cameron Block 34 Well, neither party abided by their
respective duties and responsibilities under the contract, especially with
regard to seemingly necessary communications with the other party. Yet USTE
recommenced operation under the drilling contract on November 18, 1988 with
there being no apparent meeting of the minds as to whether the drilling
operations on any given day would be in "standby", "daywork" or "turnkey"
status. Each party hoped to ultimately receive pecuniary benefits by going
forward with the operations: USTE  compensation under the drilling
contract; and PSI  revenued from production. The Panel has determined that
on February 26, 1990, the day the placement of the casing in the hole was
completed, USTE reentered "turnkey" status and that this is not seriously
disputed by the evidence. Since USTE did not accomplish the turnkey
objective after this date, it is not entitled to compensation after this
date.
There is conflicting evidence as to the status of drilling efforts from
November 18, 1988 to February 26, 1989, and the Panel believes both parties
contributed to this unresolved status. Meanwhile, USTE had commenced and
continued to drill in good faith during this time period. The Panel also
determined that the evidence and testimony as to the "drilling practices" of
USTE (possibly more properly La JFP) is inconclusive. Although there may
be, on a "backwards looking" basis, some concern about USTE not circulating
from the bottom of the hole during the November 15-30, 1988 period, there
was apparently no expression of dissatisfaction with this practice by PSI
which was being kept adequately informed about the operations at the well
site.
USTE contends its compensation under the drilling contract should consist of
dayrates from November 18, 1988 to March 31, 1990 plus interest thereon,
third party charges (with a 15% reimbursement factor), and attorney fees,
all totaling some $9,587,125.14. PSI contends USTE is entitled to no
compensation since USTE never was in "daywork" status after November 17,
1988, and never achieved the second phase turnkey objective.
*1138
CASE NUMBERR: 71 198 00243 89
U.S. Turnkey Exploration, Inc. -AND-
PSI, Inc.  Lake Charles, LA
PAGE 2 of 3
Considering the contributing factors of each party's conduct herein, the
Panel has determined that USTE should be compensate herein on a dayrate
basis for the period of November 18, 1988 to February 26, 1989, but that it
should receive only one-half of this compensation because of its failure to
adequately communicate its contended drilling status to PSI. PSI should
bear one-half of such compensation because of its failure to adequately
communicate its contentions relative to drilling status, drilling practices
and its responsibilities under the contract. Therefore, the Panel concludes
that PSI shall pay USTE the sum of One Million Nine Hundred Seventy Thousand
Two Hundred Thirty-Nine Dollars and No Cents ($1,970,239.00), itemized as
follows:
For "dayrate" status from November 18, 1988 to $ 880,000.00
February 26, 1989 (100 days × $17,600.00 less ½)
For third party charges with sufficient proof of 935,771.00
record ($1,871,542.00 less ½)
Attorney fees and costs:
 Fees on hourly basis ($155,250.00 less ½) 77,625.00
 Costs (100%) 76,843.00
Total Award to USTE $1,970,239.00
The Panel determined the following claims submitted by USTE are hereby
denied:
 1) Interest on third party charges (the lack of sufficient
 invoicing by USTE to establish a due date);
 2) 15% factor on "operator" invoices (invoices never paid by
 USTE and are, therefore, not reimbursements); and
continued...
*1139
CASE NUMBER: 71 198 00243 89
U.S. Turnkey Exploration, Inc. -AND-
PSI, Inc.  Lake Charles, LA
PAGE 3 of 3
 3) Turnkey contract price (second phase turnkey objective never
 achieved and par. 17.6 of contract not applicable because"
 turnkey" status commenced on February 27, 1990, which
 is before hole was lost).
The counterclaim submitted by PSI is hereby denied.
The administrative fees and expenses of the American Arbitration Association
totaling $26,318.65 shall be borne equally. Therefore, PSI shall pay to
USTE the sum of $5,434.32.
The compensation and expenses of the arbitrators totaling $39,984.44 shall
be borne equally and paid from deposits previously advanced by the parties.
Upon closing of the file, the Association will refund the sum of $11,645.28
to USTE, and the Association will refund the sum of $11,645.28 to PSI.
These sums represent unused deposits.
This Award is in full settlement of all claims and counterclaims submitte
to this Arbitration.
DATE: SIGNED: 
DATE: SIGNED: 
DATE: SIGNED: 
DATE:
STATE OF )
 )
COUNTY OF ) SS:
On this day of , 19 , before me personally came and
appeared , to me known and to
me known to be the individual(s) described in and who executed the foregoing
instrument, and he acknowledged to me that he executed the same.
NOTES
[1] Another ground for vacating an arbitration award based on legal error was established in Matter of Standard Coffee Service Co. and Theordore W. Preis, 499 So.2d 1314 (La.App. 4th Cir.1986), writ denied, 501 So.2d 232 (La.1987), wherein the court found that the contract which was the subject of the arbitration was void as a matter of public policy.
[2] The Supreme Court in National Tea Co. v. Richmond, 548 So.2d 930 (La.1989), noted in dicta that "evident partiality" requires more than just a showing of a disclosed business relationship between a partisan arbitrator and one of the parties.
[3] Both of the cases cited by PSI in support of this contention involve the misconduct of trial court judges not arbitrators. See American Motorists Ins. Co. v. Napoli, 166 F.2d 24 (5th Cir. 1948); U.S. v. Welliver, 601 F.2d 203 (5th Cir. 1979), overruled in part on other grounds, United States v. Adamson, 700 F.2d 953 (5th Cir.1983), cert. denied, 464 U.S. 833, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983).